{¶ 107} For the reasons stated above, I respectfully dissent.

The STATE of Ohio, Appellee,

v.

HOWARD, Appellant.

[Cite as *State v. Howard*, 190 Ohio App.3d 734, 2010-Ohio-5283.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 23815.

Decided Oct. 29, 2010.

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Johnna M. Shia, Assistant Prosecuting Attorney, for appellee.

Victor A. Hodge, for appellant.

FAIN, Judge.

{¶ 1} Defendant-appellant, Andrew Howard, appeals from an order of the trial court revoking his community-control sanction, previously imposed for his conviction for abduction, and imposing a one-year sentence. Howard contends that the trial court erred in disapproving shock incarceration, intensive-program prison, and transitional control.

{¶ 2} We conclude that the trial court erred when it disapproved of shock incarceration and intensive-program prison without making the findings required by R.C. 2929.19(D). We further conclude that the court erred by including disapproval of transitional control in the termination entry. A trial court's ability to approve or disapprove of transitional control occurs only after a person has been incarcerated and the adult parole authority sends a notice to the trial court indicating that it intends to grant transitional control under R.C. 2967.26(A).

{¶ 3} Accordingly, the sentence imposed by the trial court is reversed, and this cause is remanded for further proceedings consistent with this opinion.

I

{¶ 4} In July 2008, Andrew Howard was indicted on one count of domestic violence in violation of R.C. 2919.25(A) and one count of abduction in violation of R.C. 2905.02(A)(2). Howard subsequently pleaded no contest to abduction, and the domestic-violence charge was dismissed. Howard was sentenced to five years of community-control sanctions, which included intensive probation supervision, obtaining and maintaining employment, maintaining no contact with the victim, and attending a Stop the Violence program. After modifying the probation from intensive to basic in March 2009 due to Howard's positive strides, the trial court issued an order of capias in June 2009, requiring that Howard be arrested and held without bail. The court noted that Howard's whereabouts had been unknown since June 2009 and that a charge of domestic violence had been filed against him in Montgomery County Area II court.

{¶ 5} Howard was subsequently arrested and held in jail. In December 2009, the trial court held a revocation hearing, during which Howard admitted violating orders requiring him to maintain proof of employment. He also admitted that he was an absconder. Accordingly, the court revoked community control and sentenced Howard to a one-year prison term in the Corrections Reception Center. In a subsequent termination entry, the court added the following provision, which had not been mentioned during the revocation and sentencing hearing:

{¶ 6} "The Court disapproves of the Defendant's placement in a program of shock incarceration under Section 5120.031 of the Revised Code, or in the intensive program prison under Section 5120.032 of the Ohio Revised Code, and disapproves of the transfer of the defendant to transitional control under Section 2967.26 of the Revised Code."

{¶ 7} Howard filed a motion with the court asking that the sentencing entry be corrected to remove the above language. Howard also filed a notice of appeal in January 2009.

## II

{¶ 8} Howard's sole assignment of error is as follows:

{¶ 9} "The trial court erred by disapproving shock incarceration, intensive program prison and transitional control."

{¶ 10} Under this assignment of error, Howard contends that shock incarceration and intensive-program prison are important correctional programs that have been shown to reduce recidivism. Howard points out that a trial court can either recommend or disapprove participation in these programs or can make no recommendation at all. However, if the court makes a recommendation, R.C. 2929.19(D) requires the court to make a finding giving its reason for the recommendation or disapproval. Howard contends that the trial court violated this requirement by failing to address the matter during sentencing and by failing to make a finding in the termination entry. In addition, Howard contends that the trial court did not have statutory authority to disapprove or recommend transitional control at the time of sentencing, because that matter is not ripe until after the Adult Parole Authority has screened an offender and has made a preliminary decision to transfer the offender to transitional control.

{¶ 11} "Intensive-program prison" ("IPP") includes institutions that have military-type regimen programs as described in R.C. 5120.031 and institutions that focus on "educational achievement, vocational training, alcohol and other drug abuse treatment, community service and conservation work, and other intensive regimens or combinations of intensive regimens." R.C. 5120.032. As noted by the Ohio Department of Correction and Rehabilitation:

{¶ 12} "The 'Second Chance to Change' initiative is the newest phase in the Department's development strategy for Intensive Program Prisons (IPP's). 'Intensive Program Prisons' refers to several ninety-day programs, for which certain inmates are eligible, that are characterized by concentrated and rigorous specialized treatment services. An inmate who successfully completes an IPP will have his/her sentence reduced to the amount of time already served and will be released on post-release supervision for an appropriate time period.

{¶ 13} "These intensive treatment programs offer inmates a genuine 'Second Chance to Change' for two important reasons. First, the programs are based on correctional programs that have been shown to be effective in reducing the likelihood of recidivism. Second, each participating inmate is assessed to determine areas of need and is assigned to a program that matches his or her needs." http://www.drc.ohio.gov/web/ipp.htm.

{¶ 14} Trial courts have statutory authority under R.C. 2929.14 to address IPP and shock incarceration at the time of sentencing. This statute provides:

{¶ 15} "[T]he court may recommend the offender for placement in a program of shock incarceration under section 5120.031 of the Revised Code or for placement in an intensive program prison under section 5120.032 of the Revised Code, disapprove placement of the offender in a program of shock incarceration or an intensive program prison of that nature, or make no recommendation on placement of the offender. In no case shall the department of rehabilitation and correction place the offender in a program or prison of that nature unless the department determines as specified in section 5120.031 or 5120.032 of the Revised Code, whichever is applicable, that the offender is eligible for the placement." R.C. 2929.14(K).

{¶ 16} If the trial court disapproves IPP, the Department of Rehabilitation and Correction may not place the offender in a program. However, if the court does not make a recommendation, the Department of Rehabilitation and Correction must screen the offender and decide if there is a program in which the offender's placement is suitable. The department must then notify the court of the proposed placement, and the court has an opportunity to veto the placement. Id.

{¶ 17} R.C. 2929.19(D) further provides:

{¶ 18} "The sentencing court, pursuant to division (K) of section 2929.14 of the Revised Code, may recommend placement of the offender in a program of shock incarceration under section 5120.031 of the Revised Code or an intensive program prison under section 5120.032 of the Revised Code, disapprove placement of the offender in a program or prison of that nature, or make no recommendation. If the court recommends or disapproves placement, it shall make a finding that gives its reasons for its recommendation or disapproval."

{¶ 19} In the case before us, the trial court did not address IPP, shock incarceration, or transitional control at the sentencing hearing. The court, however, did reject Howard's potential participation in these programs in the termination entry that was subsequently filed. The state contends that the court's error, if any, is harmless, because Howard is not eligible for placement in IPP. In this regard, the state contends that Howard was convicted of a third-degree felony and caused or attempted to cause harm to his victim.

{¶ 20} R.C. 5120.131(A)(4) and 5120.032(B) provide that certain categories of persons are not eligible to participate in shock incarceration and IPP. As relevant here, this includes a prisoner in the following category:

{¶ 21} "The prisoner is serving a prison term for a felony of the third, fourth, or fifth degree that either is a sex offense, an offense betraying public trust, or an offense in which the prisoner caused or attempted to cause actual physical harm to a person, the prisoner is serving a prison term for a comparable offense under the law in effect prior to July 1, 1996, or the prisoner previously has been imprisoned for an offense of that type or a comparable offense under the law in effect prior to July 1, 1996." R.C. 5120.032(B)(2)(c).

{¶ 22} Howard was convicted of having violated R.C. 2905.02(A)(2), which states:

{¶ 23} "No person, without privilege to do so, shall knowingly do any of the following:

{¶ 24} " * * *

{¶ 25} "By force or threat, restrain the liberty of another person under circumstances that create a risk of physical harm to the victim or place the other person in fear."

{¶ 26} Assuming for purposes of argument that there is no distinction between "attempting to cause physical harm" and circumstances that "create a risk of physical harm," a conviction for abduction does not necessarily require proof of attempted physical harm. Abduction can be established when a defendant, by threat, restrains the liberty of a person "under circumstances that * * * place the other person in fear." There are obvious circumstances in which a person can be placed in fear without an attempt having been made to physically harm the person. Accordingly, an abduction conviction does not necessarily exclude a person from being considered as a possible candidate for IPP.

{¶ 27} The record in the case before us is silent concerning the specific circumstances of the alleged crime, and the trial court did not mention the facts of the crime at the revocation hearing. The state suggests that the record as a whole could be sufficient to meet the requirements of R.C. 2929.19(D). This is consistent with a theory adopted by other Ohio appellate districts, which have held that R.C. 2929.14(K) does not impose a duty on the trial court to address the IPP issue during the sentencing hearing.

{¶ 28} In *State v. Heger*, Perry App. No. 2008–CA–1, 2009-Ohio-2691, 2009 WL 1610842, the defendant claimed that his guilty plea was invalid because the trial court failed to orally inform him that he would not be recommended for IPP. Id. at ¶ 17. The Fifth District Court of Appeals rejected this contention because "a

convicted person has no constitutional right to be conditionally released prior to the expiration of a valid sentence." Id. at ¶ 23. The Fifth District Court of Appeals also stressed, "Likewise, 'Ohio law gives a convicted person no legitimate claim of entitlement to parole prior to the expiration of a valid sentence of imprisonment.'" Id., quoting *State ex rel. Seikbert v. Wilkinson* (1994), 69 Ohio St.3d 489, 490, 633 N.E.2d 1128. Thus, because no constitutionally protected liberty interest is involved, the Fifth District Court of Appeals concluded that a trial court need only substantially comply with the requirements of Crim.R. 11. Id. at ¶ 24.

{¶ 29} Although shock incarceration and IPP were not orally mentioned during sentencing in *Heger*, the plea agreement did contain a statement indicating that the defendant would not be recommended for shock incarceration or IPP. Id. at ¶ 17. Accordingly, the Fifth District concluded, "The record, when read as a whole establishes the court's specific reasons for disapproving appellant for shock incarceration or an intensive prison program and is sufficient to meet the requirements of R.C. 2929.19(D), which contains no requirement to orally inform a defendant of its recommendation, if it is indeed issuing one, at the sentencing hearing." Id. at ¶ 35.

{¶ 30} The appellant in *State v. Heger* did not raise the issue of whether the trial court was required to make specific findings before disapproving of shock incarceration or an intensive-program prison, confining himself instead to arguments that his guilty plea was defective because of the trial court's failure to have discussed these subjects with him at the plea colloquy and that his trial counsel was ineffective for having failed to inform him that he would be ineligible for either program. Indeed, although it is apparent from the opinion in *Heger* that the trial court did not recommend the appellant in that case for either program, it is not clear that the trial court affirmatively disapproved him for either or both programs.

{¶ 31} In *State v. Lowery*, Trumbull App. No. 2007–T–0039, 2007-Ohio-6734, 2007 WL 4376377, the Eleventh District Court of Appeals rejected a defendant's claim that the sentencing hearing must cover all items that end up in the sentencing entry, including disapproval of IPP and shock incarceration. Id. at ¶ 9. The Eleventh District Court of Appeals stressed that the trial court did not even have to make a recommendation. Id. at ¶ 14. The court concluded:

{¶ 32} "[T]he transcript read as a whole establishes the court's specific reasons for disapproving Mr. Lowery for shock incarceration or an intensive prison program and is sufficient to meet the requirements of R.C. 2929.19(D), which contains no requirement to orally inform a defendant of its recommendation, if it is indeed issuing one, at the sentencing hearing. Thus, the court's failure to

inform Mr. Lowery of its disapproval is harmless error at best and clearly did not prejudice Mr. Lowery." Id. at ¶ 16.

{¶ 33} We agree that the trial court in the case before us was not required to address the issue during the sentencing hearing. As noted by the Fifth and Eleventh Appellate Districts, the statutes do not require trial courts to make any kind of recommendation. Once the court makes a recommendation, however, the court is also required by R.C. 2929.19(D) to make a finding "that gives its reasons for its recommendation or disapproval."

{¶ 34} In neither *State v. Heger* nor *State v. Lowery* did the appellant assign as error the trial court's failure to make a finding in its sentencing entry "that gives its reasons for its * * * disapproval [of shock incarceration of an intensive program prison]." That issue, therefore, was not before either court.

{¶ 35} In *State v. Jackson,* Knox App. No. 05 CA 46, 2006-Ohio-3994, 2006 WL 2205651, ¶ 14–15, the Fifth District Court of Appeals found sufficient compliance with the findings requirement of R.C. 2992.19(D) in certain other findings that the trial court made in deciding to impose a greater-than-minimum sentence. See also *State v. Sears,* Franklin App. No. 02AP–1343, 2003-Ohio-2696, 2003 WL 21213410, ¶ 32 (applying trial court's comments as to the seriousness of the offense under R.C. 2929.19(B)(2)(a) to the consideration of whether early release under R.C. 2929.19(D) would be appropriate).

{¶ 36} In the case before us, the trial court did not make any specific comments when imposing a one-year sentence, other than noting generally that it had considered the purposes and principles of sentencing in R.C. 2929.11 and the seriousness and recidivism factors of R.C. 2929.12.

{¶ 37} The state contends that a presentence investigation report would have been submitted to the trial court for consideration before Howard was originally sentenced. The state also argues that we must presume the regularity of the trial court proceedings because Howard failed to submit either this document or the transcript of the original sentencing hearing to the appellate court. In contrast, Howard contends that the record is complete for purposes of appeal because the order from which his appeal is taken is the revocation and sentencing hearing in December 2009, which has been transcribed and filed with our court.

{¶ 38} The transcript of the revocation hearing does not contain any reference to the presentence investigation or the prior sentencing hearing. Because the trial court did not indicate that it relied on these matters, we fail to see their relevance. The relevant issue for purposes of the revocation hearing was whether Howard had failed to comply with his community-control sanctions and, if so, what punishment should be administered. The trial court was aware that Howard had failed to comply with his community-control sanctions, because

Howard's own statements indicate that he had absconded and had failed to maintain proof of employment. Howard also mentioned during the hearing that he had had contact with the victim of his offense, even though the court had forbidden contact.

{¶ 39} The record does not contain any finding by the trial court "that gives its reasons for its * * * disapproval [of shock incarceration or an intensive program prison]." Nor does the record contain any other findings by the trial court that could be deemed to constitute its implied reasons for disapproval of either program. In short, the record reflects a complete failure by the trial court to have complied with the finding requirement of R.C. 2929.19(D). We are therefore unable to conclude that the trial court substantially complied with that requirement.

{¶ 40} We also agree with Howard that the termination entry could not appropriately contain a statement disapproving transitional control. While not specifically conceding this point, the state has not offered any argument to support the inclusion of transitional control in the termination entry.

{¶ 41} R.C. 2967.26(A)(1) states:

{¶ 42} "Subject to disapproval by the sentencing judge, the adult parole authority may grant furloughs to trustworthy prisoners, other than those serving a prison term or term of life imprisonment without parole imposed pursuant to section 2971.03 of the Revised Code or a sentence of imprisonment for life imposed for an offense committed on or after October 19, 1981, who are confined in any state correctional institution for the purpose of employment, vocational training, educational programs, or other programs designated by the director of rehabilitation and correction within this state."

{¶ 43} R.C. 2967.26(A)(2) requires the adult parole authority to give the trial court three weeks' notice of the pendency of a prisoner's intended furlough, and of the fact that the court may disapprove the furlough. Upon request of the adult parole authority, the head of the institution in which the prisoner is confined must give the trial court a report on the prisoner's conduct in the institution, any disciplinary action, and the prisoner's participation in school, vocational training, and other rehabilitative programs. After receiving the notice and report, the trial court must give the adult parole authority timely notice of its disapproval. Id.

{¶ 44} Because the furlough recommendation does not occur until after a prisoner has been confined, the trial court's disapproval was premature.

{¶ 45} Howard's sole assignment of error is sustained.

III

{¶ 46} Howard's sole assignment of error having been sustained, the sentence imposed in this case is reversed, and this cause is remanded for resentencing in accordance with this opinion.

Judgment reversed
and cause remanded.

DONOVAN, P.J., and BROGAN, J., concur.