[Cite as *State v. Foster*, 2013-Ohio-4515.]

### IN THE COURT OF APPEALS OF OHIO
### SECOND APPELLATE DISTRICT
### MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | Appellate Case Nos. 25588 |
| | : | 25589 |
| Plaintiff-Appellee | : | 25590 |
| | : | |
| v. | : | Trial Court Case Nos. 12-CR-2087/1 |
| | : | 12-CR-1199 |
| ALLEN J. FOSTER | : | 12-CR-1524/1 |
| | : | (Criminal Appeal from |
| Defendant-Appellant | : | Common Pleas Court) |
| | : | |

. . . . . . . . . . .

## O P I N I O N

Rendered on the 11th day of October, 2013.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by CARLEY J. INGRAM, Atty. Reg. #0020084, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
      Attorneys for Plaintiff-Appellee

BROCK A. SCHOENLEIN, Atty. Reg. #0084707, Flanagan, Lieberman, Hoffman & Swaim, 15 West Fourth Street, Suite 100, Dayton, Ohio 45402
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FAIN, P.J.

{¶ 1}    In these three consolidated appeals, defendant-appellant Allen J. Foster appeals from his conviction and sentence, following a guilty plea, on two counts of Burglary, in violation of R.C. 2911.12(A)(3), felonies of the third degree, one count of Breaking and

Entering, in violation of R.C. 2913.11(A), a felony of the fifth degree, and one count of Receiving Stolen Property, in violation of R.C. 2913.51(A), a felony of the fifth degree.

{¶ 2} Foster's assigned counsel has filed a brief under the authority of *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), indicating that he has not found any potential assignments of error having arguable merit. By entry filed herein on June 26, 2013, we have afforded Foster the opportunity to file his own, pro se brief. He has not done so.

{¶ 3} After independently reviewing the record, as required by *Anders*, we have not found any potential assignments of error having arguable merit. Accordingly, the judgment of the trial court is Affirmed.

## I. The Offenses

{¶ 4} On two occasions between March 11 and March 14, 2012, Foster broke into the home of Kenneth Donohoo and stole various items, including a flat-screen television, a pistol, and several family heirlooms. Donohoo's listing of the items stolen, with values, came to a total value of $8,148.86. Donohoo said that he believed there were other items missing, but he could not recall what they were. This formed the basis for the two Burglary charges and convictions in trial court Case No. 2012 CR 2087, on appeal to this court in Case No. 25588.

{¶ 5} On or about March 10, 2012, Foster sold to First Street Recycling as scrap commercial grade extension cords that had been stolen from the City of Dayton. Dayton employee Bill Landis quoted the cost to replace these cords as $2,700. This formed the basis for the Receiving Stolen Property charge and conviction in trial court Case No. 2012 CR 1199, on

appeal to this court in Case No. 25589.

{¶ 6}   On or about May 17, 2012, Foster hid inside a Walgreens store and, after the store closed and the employees left, exited the store with boxes of cologne, cartons of cigarettes, and packs of energy drink.   The store estimated the value of the stolen goods to be $300.   The investigating police officer computed the value of the stolen cologne to be $1,503.72, and the value of the cartons of cigarettes and packs of energy drink to be $1,913.67.   This formed the basis for the Breaking and Entering charge and conviction in trial court Case No. 2012 CR 1524, on appeal to this court in Case No. 25590.

## II.   The Course of Proceedings

{¶ 7}   Foster entered into a plea agreement whereby he pled guilty to all four charges and agreed to restitution in all four cases, and the State agreed that his aggregate sentence for all four offenses would be capped at two years.   Without the latter agreement, Foster could potentially have been sentenced to eight years in prison:   one year for Breaking and Entering, one year for Receiving Stolen Property, and three years for each of the Burglary offenses.

{¶ 8}   At the plea hearing, the trial court told Foster:

> The final decision as to whether you get community control sanctions or go to prison is mine.   If the Court decides that I can't accept or live with the plea agreement that the State worked out with your attorney, what I will allow you to do is withdraw your plea of not guilty [sic] and we can set these matters for trial.

{¶ 9}   Although the trial court apparently mis-spoke, or the transcriptionist may have erred, it is clear enough from the context that the trial court was telling Foster that he would not be bound by his plea if the trial court desired to impose a prison sentence longer than the

two-year cap to which the State had agreed.

{¶ 10}   A pre-sentence investigation report was ordered.  Foster was sentenced to one year for each of the Burglary offenses, to be served concurrently, and to six months on each of the other two offenses, to be served consecutively with each other and with the Burglary sentences. The total prison sentence was therefore two years, the maximum sentence permitted by the cap agreement.

{¶ 11}   Foster was ordered to pay restitution to Donohoo in the amount of $8,148.86, to the City of Dayton in the amount of $2,700, and to Walgreens in the amount of $300.

{¶ 12}   At the sentencing hearing the trial court declared:

The Court's going to disapprove intensive program prison Schott incarceration [sic, presumably shock incarceration] transitional control.

{¶ 13}   If the trial court was referring at the sentencing hearing to transitional control under R.C. 2967.26, we have held that it is premature to disapprove of transitional control when sentencing a defendant.  *State v. Howard*, 190 Ohio App.3d 734, 2010-Ohio-5283, 944 N.E.2d 258, ¶ 44 (2d Dist.).  But in the case before us, the trial court did not, in its sentencing entry, disapprove of transitional control.  It did disapprove Foster for shock incarceration and for intensive program prison.

{¶ 14}   From his conviction and sentence, Foster appeals.


### III.   There Are No Potential Assignments of Error Having Arguable Merit

{¶ 15}   In his brief, assigned counsel discusses two potential assignments of error, but finds that neither has any merit.  The first of these is that Foster's plea was not knowing and intelligent.  And the first issue raised concerns the trial court's statement, at the plea hearing:

"So your attorneys have worked out an agreement in which you're getting minimal exposure to prison, if at all." Counsel suggests that the two-year cap on the prison sentence is not minimal, because the minimum possible prison sentence would have been nine months, the minimum sentence for each of the Burglary offenses, assuming that all four prison sentences were ordered to be served concurrently.

{¶ 16} We agree with Foster's counsel that this issue is without arguable merit. While the trial court's statement quoted above may have been technically incorrect, the trial court most likely meant only that the two-year cap on the sentence to which the State had agreed meant that the prison sentence imposed, if any, would be on the shorter side of the range from nine months to eight years that could possibly be imposed for the four offenses. Foster was represented by experienced trial counsel. If the trial court's statement actually misled him into believing that he had got the best possible plea bargain as to the prison sentence, short of an agreement that community control sanctions would be imposed, and if that mistaken belief was material to his decision to accept the plea bargain, he could have moved to withdraw his plea. Nothing in this record suggests that Foster mistakenly believed that a two-year prison sentence was the minimum prison sentence that could be imposed.

{¶ 17} Appellate counsel next refers to the following statement by the trial court at the plea hearing:

Now those sentences could run, if you didn't have a plea agreement, they could run together which is called concurrent or they could run one right after the other consecutive. You've worked out a plea agreement, so we really don't have to go over that.

{¶ 18} Counsel suggests that this statement raises the issue that the trial court did not advise

Foster of the maximum sentence that could be imposed, apart from the agreed cap. But right after the above-quoted statement, in discussing the consequences of Foster's violating any community control sanctions that might be imposed, the trial court told him:

> You violate community control sanctions, you could be sent to prison for the maximum time of your felony which would be in this case – which could be eight years. And the maximum would be eight years based upon the fact that if I ran them one right after the other, the maximum amount of time in the receiving stolen property charge would be one year. The maximum in the breaking and entering would be one year. So that's two years. One year, one year. Each of the burglaries, the maximum would be 36 months or three years. So you got three years, three years, one year, one year, that's the maximum, that's eight years. Okay.

{¶ 19} After the above-quoted statement by the trial court, Foster could not have been in any doubt as to the maximum possible sentence for each of the offenses individually, or as to the maximum possible aggregate sentence, eight years, for all four offenses.

{¶ 20} Finally, appellate counsel raises as a possible issue that Foster may have been misled from the trial court's remarks at the plea hearing that it was absolutely bound to impose a sentence within the agreed cap, "and consequently that in no instance could he receive a greater prison sentence than the twenty four (24) month agreed cap." But as noted in Part II, above, the trial court made it clear to Foster that if the trial court decided not to be bound by the two-year cap, then Foster would not be bound by the plea agreement – he could withdraw his plea and proceed to trial. Thus, Foster was not misled into thinking that he could not, *as a result of his plea*, receive a prison sentence greater than two years. He was not misled in this regard, because

the trial court had agreed that it would not impose a sentence greater than two years as a result of Foster's plea. For a sentence greater than two years to have been imposed, Foster would either have had to have been tried and convicted, or he would have had to have decided, after being permitted to withdraw his plea, to plead guilty. Either way, Foster was not misled as to the consequences of the plea he entered at the plea hearing. He could not, in fact, have been sentenced to a prison term greater than two years as a consequence of that plea.

{¶ 21} Next, assigned counsel raises the potential assignment of error that the two-year prison sentence imposed constituted an abuse of the trial court's discretion. Counsel refers to some facts that the trial court mentioned at the sentencing hearing as indicating that Foster lacked remorse. These included the fact that Foster made no apparent effort to return any of the items, including heirlooms, that he stole from his individual victim, Donohoo, despite the fact that Donohoo had noticed Foster wearing one of them, a chain, on Foster's Facebook. Counsel suggests that the trial court's reference to these facts may violate the prohibition against judicial fact-finding set forth in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d. 470.

{¶ 22} We agree with counsel that this potential assignment of error has no arguable merit, because it is based upon a misreading of *Foster*. In *Foster*, the Supreme Court of Ohio cited the holding in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), upon which *Foster* was based: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Foster*, ¶ 3, quoting *Apprendi*, at 530 U.S. 490. The trial court in the case before us was not relying upon any facts to increase the penalties for the crimes of which Foster was convicted beyond the statutory maximum sentence prescribed. The trial court was merely referring to the facts of this case in explaining its reasoning for

imposing the sentence that it did.  While *Foster* does not require a trial court to explain its reasoning, we regard the giving of an explanation as a practice to be encouraged, not discouraged.

**{¶ 23}**  (R.C.  2929.14(C)(4) does require certain findings for the imposition of consecutive sentences.   The trial court made those findings in this case.)

**{¶ 24}**  Under *Anders v. California*, we have an independent duty to review the record and determine whether there are any potential assignments of error having arguable merit.   We have found none.   Consequently, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

HALL and WELBAUM, JJ., concur.


Copies mailed to:

Mathias H. Heck
Carley J. Ingram
Brock A. Schoenlein
Allen J. Foster
Hon. Frances E. McGee