[Cite as *State v. Peltier*, 2019-Ohio-569.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CHAMPAIGN COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2018-CA-21 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-187 |
| | : | |
| LARRY E. PELTIER, JR. | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 15th day of February, 2019.

. . . . . . . . . . .

JANE A. NAPIER, Atty. Reg. No. 0061426, Assistant Prosecuting Attorney, Champaign County Prosecutor's Office, 200 North Main Street, Urbana, Ohio 43078
    Attorney for Plaintiff-Appellee

CHRIS BECK, Atty. Reg. No. 0081844, 1370 North Fairfield Road, Suite C, Beavercreek, Ohio 45432
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, P.J.

{¶ 1} Defendant-appellant, Larry E. Peltier, Jr., appeals from his conviction in the Champaign County Court of Common Pleas after he pled guilty to aggravated possession of drugs, possession of drug abuse instruments, and illegal use or possession of drug paraphernalia. On October 18, 2018, Peltier's appellate counsel filed a brief under the authority of *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), asserting the absence of any non-frivolous issues for appeal. On October 31, 2018, this court notified Peltier that his counsel found no meritorious claims to present on appeal and granted him 60 days to file a pro se brief assigning any errors. Peltier, however, did not file a pro se brief. After reviewing the entire record as prescribed by *Anders*, we find no issues with arguable merit. Accordingly, the judgment of the trial court will be affirmed.

**Facts and Course of Proceedings**

{¶ 2} On September 7, 2017, the Champaign County Grand Jury returned a three-count indictment charging Peltier with aggravated possession of drugs (fentanyl) in violation of R.C. 2925.11(A), a felony of the fifth degree; possession of drug abuse instruments in violation of R.C. 2925.12(A), a misdemeanor of the first degree; and illegal use or possession of drug paraphernalia in violation of R.C. 2925.14(C)(1), a misdemeanor of the fourth degree. The indictment also included two forfeiture specifications.

{¶ 3} The aforementioned charges and specifications arose after Peltier's mother called the police and reported that her son had overdosed on what Peltier later admitted

was fentanyl. While Peltier was receiving medical treatment, Peltier's mother advised the officers that she had removed a syringe from Peltier's arm just prior to their arrival. Upon searching Peltier's bedroom, the officers found the syringe, as well as a cellophane wrapper, several cut straws, cotton swabs, a syringe cap, and a capsule containing light brown powder. Peltier was thereafter transported to the hospital where he provided a urine sample that tested positive for fentanyl.

{¶ 4} On October 18, 2017, Peltier appeared before the trial court and pled guilty to all the indicted charges and specifications. After accepting Peltier's guilty plea, the trial court ordered a presentence investigation ("PSI") and scheduled the matter for sentencing on November 15, 2017. At sentencing, the trial court made findings under R.C. 2929.13(B)(1)(b)(x) and (xi) that gave it discretion to impose a prison term for Peltier's fifth-degree-felony offense of aggravated possession of drugs. However, instead of sentencing Peltier to prison, the trial court ordered Peltier to pay court costs and imposed three years of community control. As part of the conditions of his community control, Peltier was required to obey the law and not associate with individuals who have a criminal background without permission from his probation officer.

{¶ 5} On January 8, 2018, Peltier's probation officer filed a Notice of Supervision Violation with the trial court alleging that Peltier had violated multiple conditions of his community control. Specifically, the notice alleged that on December 29, 2017, Peltier, who did not have a valid driver's license, operated a motor vehicle under the influence of alcohol while his 13-year-old daughter and a female with a criminal background were riding as passengers. The notice also alleged that Peltier did not request permission to have contact with that female.

{¶ 6} On January 19, 2018, the trial court held a hearing on the merits of Peltier's alleged community control violations. At the outset of the hearing, Peltier indicated that he intended to admit to all the alleged violations. Before Peltier's admission, the trial court informed Peltier that as a result of the violations, it could either return him to community control or send him to prison. The trial court explained that if it returned him to community control, the court could extend his supervision for a period not to exceed five years or impose more restrictive sanctions. The trial court also explained that if it decided to revoke community control, the court would impose 12 months in prison for the aggravated possession of drugs charge, 3 months in jail for the possession of drug abuse instruments charge, and 15 days in jail for the possession of drug paraphernalia charge, and would order all the sentences to be served concurrently for a total term of 12 months in prison.

{¶ 7} After performing a thorough colloquy that ensured Peltier understood the possible consequences of his admission, Peltier admitted to all the alleged community control violations. Following his admission, the trial court found Peltier guilty of violating community control and immediately proceeded to sentencing.

{¶ 8} During the sentencing portion of the hearing, the trial court returned Peltier to community control under the same conditions previously imposed, but with the added condition that he complete the West Central Community Based Correctional Facility Residential Treatment Program ("West Central Program"). The trial court also ordered Peltier to pay the court costs previously imposed and the court costs and legal fees associated with the community control violation proceedings.

{¶ 9} In addition, the trial court advised Peltier at the sentencing hearing and in the

sentencing entry that if he violated community control again, the court could extend his period of community control for a period not to exceed five years, impose a more restrictive sanction, or sentence him to prison.   The trial court also advised Peltier that if it revoked community control and sentenced him to prison, the court would impose the previously discussed 12-month prison term.

{¶ 10} On April 19, 2018, the trial court received another Notice of Supervision Violation from Peltier's probation officer alleging that Peltier had violated a condition of his community control.   Specifically, the notice alleged that on April 18, 2018, Peltier terminated his participation in the West Central Program.

{¶ 11} On May 4, 2018, the trial court held a hearing on the merits of the alleged community control violation.   As he had done previously, Peltier initially advised the trial court that he intended to admit to the alleged violation.   The trial court then performed a thorough colloquy to ensure that Peltier understood the possible consequences of admitting to the violation.   In doing so, the trial court referenced the same consequences and 12-month prison term that it had discussed with Peltier during his first violation hearing.   After the trial court ensured that Peltier understood the possible consequences of his admission, Peltier admitted to terminating his participation in the West Central Program.   The trial court then found him guilty of violating community control and immediately proceeded to sentencing.

{¶ 12} During the sentencing portion of the hearing, the trial court indicated that it had considered the community control violation report prepared by the Adult Parole Authority and the statements of counsel and Peltier.   The trial court also considered the purposes and principles of sentencing in R.C. 2929.11 and the seriousness and

recidivism factors in R.C. 2929.12. In light of these considerations, the trial court revoked Peltier's community control and imposed a 12-month prison term with 85 days of jail time credit. The trial court also ordered Peltier to pay the court costs and legal fees previously ordered to be paid, as well as the court costs incurred as a result of Peltier's second community control violation.

{¶ 13} With leave of this court, on August 13, 2018, Peltier filed a delayed appeal from the trial court's decision revoking his community control and sentencing him to 12 months in prison. Peltier was then appointed an appellate counsel who, as noted above, filed a brief pursuant to *Anders*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493.

## Law and Analysis

{¶ 14} According to *Anders*, this court must conduct an independent review of the record to determine if the appeal at issue is wholly frivolous. *Id.* at 744. "*Anders* equates a frivolous appeal with one that presents issues lacking in arguable merit. An issue does not lack arguable merit merely because the prosecution can be expected to present a strong argument in reply, or because it is uncertain whether a defendant will ultimately prevail on that issue on appeal." *State v. Marbury*, 2d Dist. Montgomery No. 19226, 2003-Ohio-3242, ¶ 8. Rather, "[a]n issue lacks arguable merit if, on the facts and law involved, no responsible contention can be made that it offers a basis for reversal." *Id.*, citing *State v. Pullen,* 2d Dist. Montgomery No. 19232, 2002-Ohio-6788, ¶ 4.

{¶ 15} If we determine the appeal is frivolous, we may grant counsel's request to withdraw and then dismiss the appeal without violating any constitutional requirements, or we can proceed to a decision on the merits if state law requires it. *State v. McDaniel*,

2d Dist. Champaign No. 2010 CA 13, 2011-Ohio-2186, ¶ 5, citing *Anders* at 744. However, "[i]f we find that any issue presented or which an independent analysis reveals is not wholly frivolous, we must appoint different appellate counsel to represent the defendant." *Marbury* at ¶ 7, citing *Pullen* at ¶ 2.

{¶ 16} In this case, Peltier's appellate counsel has raised one potential assignment of error for this court's review. Specifically, counsel suggests that Peltier's trial counsel was ineffective in failing to avoid the aggravated possession of drugs charge by asserting immunity under R.C. 2925.11(B)(2)(b). That statute provides, in relevant part, that a "qualified individual" shall not be arrested, charged, prosecuted, convicted, or penalized for a minor drug possession offense if the evidence on which the possession offense is based is obtained as the result of the "qualified individual" experiencing an overdose and needing medical assistance. R.C. 2925.11(B)(2)(b). Although the drug evidence against Peltier was obtained as the result of him overdosing on fentanyl, counsel nevertheless concedes that Peltier is not a "qualified individual" as defined by the statute because, at the time of his overdose, Peltier was on community control sanctions for a domestic relations case in the Champaign Municipal Court. *See* R.C. 2929.11(B)(2)(a)(viii).

{¶ 17} Regardless of counsel's concession, we note that this court does not have jurisdiction to consider the issue raised in counsel's potential assignment of error. It is well established that this court may only consider the order appealed from, which in this case is the May 4, 2018 order revoking Peltier's community control and sentencing him to 12 months in prison. Peltier cannot collaterally attack his un-appealed conviction for aggravated possession of drugs through an appeal of the trial court's revocation of

community control.  *See State v. Ryan*, 2d Dist. Greene No. 2008-CA-99, 2010-Ohio-216, ¶ 4 (where the appellant "has appealed from the revocation of his community control * * * [t]his is the only matter before us; we have no jurisdiction to consider any other issues"); *State v. Kelly*, 2d Dist. Champaign No. 2004 CA 6, 2005-Ohio-3178, ¶ 20-21 (appellant's claim that his trial counsel was ineffective in failing to object to certain conditions of community control was untimely and not properly raised on appeal given that the appeal was from the trial court's order revoking community control); *State v. Grimes*, 2d Dist. Montgomery No. 20746, 2005-Ohio-4510, ¶ 11.  Therefore, counsel's potential assignment of error lacks merit.

{¶ 18} That said, in conducting an independent review of the record, this court found that when sentencing Peltier to prison, the trial court recommended that Peltier be placed in intensive program prison ("IPP").  R.C. 2929.19(D) provides that "[i]f the court recommends or disapproves placement [in IPP], it shall make a finding that gives its reasons for its recommendation or disapproval."  This court has previously held that a general statement indicating that the trial court based its decision to approve or disapprove IPP after reviewing certain parts of the record (such as criminal history, PSI, and facts and circumstances of the offense) does not satisfy the finding requirement in R.C. 2929.19(D).  *See, e.g., State v. Allender*, 2d Dist. Montgomery No. 24864, 2012-Ohio-2963, ¶ 13-14, 23, 26; *State v. Matthews*, 2d Dist. Montgomery No. 26405, 2015-Ohio-3388, ¶ 4-5, 14.

{¶ 19} In this case, the trial court indicated that it decided to recommend Peltier for IPP after reviewing "the nature of the community control violations."  Journal Entry of Community Control Merits and Disposition (May 4, 2018), Champaign C.P. No. 2017-CR-

187, Docket No. 77, p. 5. Although the trial court discussed the nature of Peltier's community control violations during the sentencing hearing, we find that it could nevertheless be argued that the trial court did not satisfy the finding requirement in R.C. 2929.19(D). However, even if the trial court did err in failing to comply R.C. 2929.19(D), Peltier was not subject to any resulting prejudice because, as noted above, the trial court recommended that Peltier be placed in IPP.

{¶ 20} IPP " 'refers to several ninety-day programs, for which certain inmates are eligible, that are characterized by concentrated and rigorous specialized treatment services. An inmate who successfully completes an IPP will have his/her sentence reduced to the amount of time already served and will be released on post-release supervision for an appropriate time period.' " *State v. Howard*, 190 Ohio App.3d 734, 2010-Ohio-5283, 944 N.E.2d 258, ¶ 12 (2d Dist.), quoting the Ohio Department of Correction and Rehabilitation website. Given that IPP benefits Peltier, no responsible contention can be made that the trial court's failure to make the required findings before recommending IPP offers a basis for reversal. Simply stated, the trial court's failure amounts to, at worst, harmless error.

{¶ 21} This court could not otherwise find any error of arguable merit that resulted in prejudice to Peltier. Therefore, we agree with Peltier's appellate counsel that, based on the facts and relevant law, there are no issues with arguable merit to present on appeal.

## Conclusion

{¶ 22} The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FROELICH, J. and HALL, J., concur.

Copies sent to:

Jane A. Napier
Chris Beck
Larry E. Peltier, Jr.
Hon. Nick A. Selvaggio