[Cite as *State v. Kendall*, 2019-Ohio-2836.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2019-CA-5 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-209 |
| | : | |
| JAMES LEE KENDALL | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 12th day of July, 2019.

. . . . . . . . . .

KEVIN TALEBI, Atty. Reg. No. 0069198, Champaign County Prosecutor's Office, Appellate Division, 200 North Main Street, Urbana, Ohio 43078
      Attorney for Plaintiff-Appellee

BYRON K. SHAW, Atty. Reg. No. 0073124, 4800 Belmont Place, Huber Heights, Ohio 45424
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} James Lee Kendall pled guilty in the Champaign County Court of Common Plea to one count of domestic violence, in violation of R.C. 2919.25(A), a third-degree felony. In exchange for the plea, the State dismissed a charge of burglary, a felony of the second degree. After a presentence investigation, the trial court imposed a maximum 36-month sentence and ordered Kendall to pay court costs and legal fees and expenses. For the following reasons, the trial court's judgment will be affirmed.

## I. *Anders* Appeal Standard

{¶ 2} Kendall's appellate counsel has filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), indicating that he found "no valid appellate issues." Counsel stated that Kendall's plea and conviction "involved a plea that was knowingly, intelligently, and voluntarily given with full understanding of his constitutional rights prior to sentencing accordingly." We informed Kendall that his attorney had filed an *Anders* brief on his behalf and granted him 60 days from that date to file a pro se brief. To date, no pro se brief has been filed.

{¶ 3} Pursuant to *Anders*, we must determine, "after a full examination of all the proceedings," whether the appeal is "wholly frivolous." *Id.* at 744; *Penson v. Ohio*, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988). An issue is not frivolous merely because the prosecution can be expected to present a strong argument in reply. *State v. Pullen*, 2d Dist. Montgomery No. 19232, 2002-Ohio-6788, ¶ 4. Rather, a frivolous appeal is one that presents issues lacking arguable merit, which means that, "on the facts and law involved, no responsible contention can be made that it offers a basis for reversal." *State v. Marbury*, 2d Dist. Montgomery No. 19226, 2003-Ohio-3242, ¶ 8, citing

*Pullen* at ¶ 4. If we find that any issue — whether presented by appellate counsel, presented by the defendant, or found through an independent analysis — is not wholly frivolous, we must appoint different appellate counsel to represent the defendant. *Id.* at ¶ 7.

## II. Factual and Procedural History

**{¶ 4}** According to the municipal court complaint, at 10:54 a.m. on Tuesday, November 6, 2018, two Urbana police officers responded to the residence of Andrea Huffman, with whom Kendall has a minor child. When the officers arrived, they saw Huffman shoving Kendall out the back screen door of her home. Kendall told the officers that Huffman was "crazy." The officers noticed that Kendall was unsteady on his feet and had a strong odor of an alcoholic beverage coming from his person. Approximately a week prior to this incident, the officers had told Kendall that Huffman did not want him at her house, and the officers inquired why Kendall had returned. Kendall reported that Huffman had called him and asked him to come over.

**{¶ 5}** One of the officers spoke with Huffman in her residence. The officer observed that a coffee table and the dining room table were flipped over, a tub of Halloween decorations was dumped on its side, and a cabinet in the dining room was "shoved over." Huffman reported that she had gotten out of the shower and found Kendall sitting in her kitchen; she had not invited him over. She told the officer that Kendall "keeps coming to my house and just walking in." Kendall had told Huffman that he wanted to see his daughter, who was at school. Huffman stated to the officer that, when she had asked Kendall to leave, Kendall began arguing with her and starting flipping over furniture. Huffman also reported that Kendall threw a Halloween decoration at her,

hitting her in the arm, and he "smacked her in the head with an open hand." Kendall also threw Huffman's purse at her in the dining room and threw a glass sugar container at her in the kitchen, barely missing her. Huffman's hair was still wet, and she had a bruise on the back of her left arm. Huffman told the officer that she had tried for ten years to get Kendall to "sober up and quit drinking."

{¶ 6} The officers arrested Kendall and charged him with domestic violence, burglary, and criminal damaging. In December 2018, Kendall was indicted for burglary with a specification that he had a prior conviction for burglary, and for domestic violence with a specification that he had three prior convictions for domestic violence. The trial court set a $20,000 cash or surety bond; it denied Kendall's subsequent request for a personal recognizance bond or a reduction in bond. Kendall remained in custody while his case was pending.

{¶ 7} A jury trial was scheduled for January 29, 2019. At a January 3, 2019 pretrial conference, the parties indicated that they wished to have a plea hearing. At the time, Kendall pled guilty to domestic violence as a third-degree felony; pursuant to the parties' agreement, the State requested dismissal of the burglary charge. The trial court ordered a presentence investigation.

{¶ 8} On January 28, 2019, the trial court sentenced Kendall to a maximum 36-month sentence; the trial court informed Kendall that he would receive 84 days of jail time credit. The court told Kendall that he "may be eligible to earn days of credit for productively participating in certain prison programming." The court recommended that Kendall serve a risk reduction sentence if he were eligible for the program, but stated that it did not recommend and disapproved of Kendall's placement in an intensive program

prison "[a]fter considering the seriousness and recidivism factors," which it had previously discussed. The court further told Kendall:

> In addition, the Court would favorably consider you to judicial release to the West Central Community-Based Correctional Facility Program after you've served 12 months of your sentence. And as long as you've not committed prison rule infractions to such a degree that the Court finds that you would not be amendable to community control.

The court explained its reasons for considering judicial release, stating that it was trying to balance the facts that (1) Kendall engages in behavior that makes people feel unsafe, (2) he threatens their lifestyle and the safety and security of their household, and (3) he wants treatment, is willing to engage in treatment, and the court believed he was a good candidate for treatment. Upon inquiry from the prosecutor, the court clarified that the 12-month period would include Kendall's time in jail while his case was pending.

{¶ 9} The trial court ordered Kendall to pay court costs and the cost of his legal fees and expenses. It indicated that "[t]here will be a Court order to withhold funds from your inmate account to pay off your court costs and legal fees."

{¶ 10} The court's written judgment entry was consistent with its oral sentence.

### III. *Anders* Review

### A. Pretrial Matters

{¶ 11} As an initial matter, we find no non-frivolous issues related to the events prior to Kendall's guilty plea. A plea of guilty is a complete admission of guilt. *E.g., State v. Faulkner*, 2d Dist. Champaign No. 2013-CA-43, 2015-Ohio-2059, ¶ 9; *State v. Wheeler*, 2d Dist. Montgomery No. 24112, 2011-Ohio-3423, ¶ 3; Crim.R. 11(B)(1).

Consequently, a guilty plea generally waives all appealable errors that may have occurred in the trial court, unless such errors precluded the defendant from knowingly, intelligently, and voluntarily entering his or her guilty plea. *See, e.g., State v. Kelley*, 57 Ohio St.3d 127, 566 N.E.2d 658 (1991), paragraph two of the syllabus; *Wheeler* at ¶ 3. Kendall had requested a personal recognizance bond or a reduction in bond, which was denied. However, we find nothing in the record to suggest that the denial of his request affected, in any respect, his decision to enter a plea.

### B. Kendall's Guilty Plea

{¶ 12} Crim.R. 11(C)(2) requires a trial court to address the defendant personally and (a) determine that the defendant is making the plea voluntarily, with an understanding of the nature of the charges and the maximum penalty, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions; (b) inform the defendant of and determine that the defendant understands the effect of the plea of guilty and that the court, upon acceptance of the plea, may proceed with judgment and sentencing; and (c) inform the defendant and determine that he or she understands that, by entering the plea, the defendant is waiving the rights to a jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses, and to require the State to prove guilt beyond a reasonable doubt at a trial at which he or she cannot be compelled to testify against himself or herself. *State v. Brown*, 2d Dist. Montgomery No. 21896, 2007-Ohio-6675, ¶ 3.

{¶ 13} The Supreme Court of Ohio has urged trial courts to comply literally with Crim.R. 11. *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 29. The trial court must comply strictly with Crim.R. 11(C)(2)(c), as it pertains to the waiver of

federal constitutional rights. *Clark* at ¶ 31. However, because Crim.R. 11(C)(2)(a) and (b) involve non-constitutional rights, the trial court need comply only substantially with those requirements. *E.g., State v. Bishop*, 156 Ohio St.3d 156, 2018-Ohio-5132, __ N.E.3d __, ¶ 11. "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he [or she] is waiving." *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990).

> * * * But "[w]hen the trial judge does not *substantially* comply with Crim.R. 11 in regard to a nonconstitutional right, reviewing courts must determine whether the trial court *partially* complied or *failed* to comply with the rule." (Emphasis sic.) *Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, at ¶ 32. "If the trial judge partially complied, e.g., by mentioning mandatory postrelease control without explaining it, the plea may be vacated only if the defendant demonstrates a prejudicial effect." *Id.* But if the trial court completely failed to comply with the rule, the plea must be vacated. *Id.* Complete failure " 'to comply with the rule does not implicate an analysis of prejudice.' " *Id.*, quoting *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224, ¶ 22.

*Bishop* at ¶ 19. *See also State v. McGlinch*, 2019-Ohio-1380, __ N.E.3d __, ¶ 28 (2d Dist.).

{¶ 14} We have reviewed the transcript of the plea hearing. The record reflects that the trial court fully complied with its obligations under Crim.R.11, and that Kendall knowingly, intelligently, and voluntarily entered his guilty plea to domestic violence, a

third-degree felony.   We find no non-frivolous issues related to Kendall's guilty plea.

### C. Kendall's Sentence

**{¶ 15}** In reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2), rather than an abuse of discretion standard.   *See State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 9.   Under R.C. 2953.08(G)(2), an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it "clearly and convincingly" finds either (1) that the record does not support certain specified findings or (2) that the sentence imposed is contrary to law.   *State v. Huffman*, 2d Dist. Miami No. 2016-CA-16, 2017-Ohio-4097, ¶ 6.

**{¶ 16}** "The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences."   *State v. King*, 2013-Ohio-2021, 992 N.E.2d 491, ¶ 45 (2d Dist.).   However, in exercising its discretion, a trial court must consider the statutory policies that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12.   *State v. Leopard*, 194 Ohio App.3d 500, 2011-Ohio-3864, 957 N.E.2d 55, ¶ 11 (2d Dist.), citing *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 38.

**{¶ 17}** At the beginning of the sentencing hearing, the trial court indicated that it had reviewed the presentence investigation report (PSI) and the State's sentencing memorandum, which included photographs of the condition of Huffman's apartment after the incident.   The State requested at the sentencing hearing that the court impose a 36-month sentence, emphasizing Kendall's criminal history and the fact that Kendall had

ignored warnings from police officers to stay away from Huffman's residence. The prosecutor argued that Kendall was not amenable to community control.

{¶ 18} Huffman provided a brief statement at the sentencing hearing, telling the court that Kendall was an alcoholic who needed treatment and that he was "a good person" when he was sober.

{¶ 19} Defense counsel requested community control for Kendall. Counsel acknowledged that Kendall had been to prison previously, but stated that Kendall was trying to obtain inpatient treatment. Counsel argued that Kendall "understands the pattern of his behavior * * * [, that] he has a substance abuse problem * * * [and] that the victim in this case did not deserve that kind of treatment. The victim did not deserve hi[s] barging into her house and frightening her." Counsel asked the court to consider placement at West Central for treatment.

{¶ 20} Kendall read a prepared statement. He expressed that he (now 50 years old) had been drinking since he was 15 years old. He acknowledged that he has been "in and out of trouble with the law since about the age of 18" and that his offenses were always alcohol-related. Kendall described his efforts to obtain sobriety, including inpatient hospitalizations and Vivitrol shots, and his successes and relapses. Kendall asked for the chance to "get back on that horse again." He stated, "I want to get off alcohol for good."

{¶ 21} The trial court then spoke with Kendall about his prison record and the circumstances of his past domestic violence offenses. The circumstances of his prior domestic violence convictions were similar to those involved in this case; Huffman also was a victim of one of his prior domestic violence offenses. The court told Kendall that

"these kinds of cases are extremely difficult for the court," and it discussed the various factors it must consider in determining an appropriate sentence, including the rehabilitation of the offender and the need to protect the public generally and the victim specifically.

{¶ 22} After speaking with Kendall, the court indicated that it had considered the PSI, the State's sentencing memorandum, the statements of counsel and Kendall, and the court's interaction with Kendall. The court noted that Kendall had a high Ohio Risk Assessment Score, while recognizing that ORAS "is merely a tool that Courts are to use." The court stated that it had considered the purposes and principles of sentencing, and it evaluated and discussed seriousness and recidivism factors. The court stated that it had also considered Kendall's present and future ability to pay financial obligations, finding Kendall to be employable and in good health. The court then imposed 36 months in prison and ordered Kendall to pay court costs and the cost of his legal fees and expenses.

{¶ 23} Kendall's appellate counsel has identified no potential assignments of error arising from Kendall's prison sentence, and our review of the record also has disclosed none. Kendall has an extensive misdemeanor criminal record dating back to 1987; many of those offenses involved disorderly behavior or the use of drugs or alcohol. Kendall was convicted of domestic violence in 2003 (first-degree misdemeanor), 2005 (fourth-degree felony), and 2010 (fourth-degree felony), along with other offenses. He served two years in prison for the 2005 case and 18-months in prison for the 2010 case; both of those cases involved Kendall's breaking into his girlfriend's residence, damaging property, and assaulting his girlfriend. The trial court had discretion to impose a maximum 36-month prison term for Kendall's third-degree felony domestic violence

offense and, based on the record, an argument that the court's sentence was clearly and convincingly unsupported by the record would be frivolous.

{¶ 24} Moreover, we find no arguably meritorious claim that the court erred in ordering Kendall to pay court costs and legal fees and expenses. Kendall has a GED and the PSI reflects that Kendall has obtained employment in the past. He was most recently employed in 2018. The court found that Kendall had a present and future ability to pay financial sanctions, and we find any claim regarding that determination to be frivolous.

{¶ 25} The trial court disapproved of Kendall's placement in an intensive program prison (IPP). Pursuant to R.C. 2929.19(D), a trial court may recommend placement in IPP, disapprove placement, or make no recommendation. If the court recommends or disapproves placement, "it shall make a finding that gives its reasons for its recommendation or disapproval." *Id.* This court has previously held that a general statement indicating that the trial court based its decision to approve or disapprove IPP after reviewing certain parts of the record (such as criminal history, PSI, and facts and circumstances of the offense) does not satisfy the finding requirement in R.C. 2929.19(D). *E.g., State v. Peltier*, 2d Dist. Champaign No. 2018-CA-21, 2019-Ohio-569.

{¶ 26} Any error in the disapproval of IPP is necessarily harmless, however, when the defendant is not eligible for IPP. *E.g., State v. Felton*, 2d Dist. Montgomery No. 27239, 2017-Ohio-761, ¶ 29; *State v. Walz*, 2d Dist. Montgomery No. 23783, 2012-Ohio-4627, ¶ 26. R.C. 5120.032(B)(2)(a) states that a prisoner is not eligible to participate in an intensive program prison if he or she "previously has been imprisoned for aggravated murder, murder, or a felony of the first or second degree."

**{¶ 27}** Here, the PSI reflects that in Champaign C.P. No. 2005 CR 190, Kendall was convicted of burglary, a second-degree felony, for which he served two years in prison. As a result of that conviction, Kendall was ineligible to participate in an intensive program prison. Accordingly, we find no arguably meritorious claim that the trial court committed reversible error in its disapproval of that program.

**{¶ 28}** Finally, the court's judgment entry included an order for the withholding of funds from Kendall's inmate account. Specifically, the entry reads:

Pursuant to OAC §5120-5-03(B), the Champaign County Clerk of Courts is **ORDERED** to provide the Ohio Department of Rehabilitation and Correction with a certified copy of judgment of the Defendant's total amount of financial obligations due and owing (i.e., restitution, court costs, fines, and court-appointed legal fees and expenses) as set forth within this Journal Entry.

* * *

Pursuant to OAC §§5120-5-03(D) and (E), OAC §§ 5120-3-09(A)(1) and (2), and R.C. §5145.15(C)(8)(b)(i), the Ohio Department of Rehabilitation and Correction is **ORDERED** to **WITHHOLD** funds from the Defendant's inmate account in such amounts as provided by the Ohio Administrative Code and Ohio Revised Code cited herein, and **DISTRIBUTE** said funds to the Champaign County Clerk of Courts until sufficient funds have been paid to fully satisfy the financial obligations due and owing in the certificate of judgment.

The Clerk of Courts shall apply any monies received from the Ohio Department of Rehabilitation and Correction to restitution, court costs, fines,

and court-appointed legal fees and expenses in that order.

(Emphasis sic.)

**{¶ 29}** Ohio Adm.Code 5120-5-03 establishes "guidelines and procedures for withdrawing money that belongs to an inmate and that is in an account kept for the inmate by the department of rehabilitation and correction (DRC), upon receipt of a certified copy of a judgment of a court of record in an action in which an inmate was a party that orders an inmate to pay a stated obligation."   Ohio Adm.Code 5120-5-03(A).   Likewise, R.C. 5120.133(A) "permits the Department of Rehabilitation and Correction to deduct payments toward a certified judgment from a prisoner's account without any other required proceeding in aid of execution[.]"   *State v. Threatt*, 108 Ohio St.3d 277, 2006-Ohio-905, 843 N.E.2d 164, ¶ 13.

**{¶ 30}** In *State v. Skirvin*, 2d Dist. Champaign No. 2017-CA-26, 2019-Ohio-2040, we found language similar to that in Kendall's judgment entry to be an appropriate method for collecting court costs and court-appointed counsel fees.   *See id.* ¶ 19-24.   In light of that opinion, we find no non-friviolous claim related to the court's order regarding the collection of Kendall's financial obligations (i.e., court costs and legal fees and expenses).

### IV. Independent Review

**{¶ 31}** We have examined the entire record and conducted our independent review in accordance with *Penson*, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300.   We agree with appellate counsel that no non-frivolous issues exist for appeal.   Accordingly, the trial court's judgment will be affirmed.

. . . . . . . . . . . .

DONOVAN, J. and TUCKER, J., concur.

Copies sent to:

Kevin Talebi
Byron K. Shaw
James Lee Kendall
Hon. Nick A. Selvaggio