[Cite as *State v. Williams*, 2019-Ohio-4873.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ADAMS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No. 19CA1090 |
| | : | |
| vs. | : | |
| | : | |
| JESSE LEE WILLIAMS | : | <u>DECISION AND JUDGMENT</u> |
| | : | <u>ENTRY</u> |
| Defendant-Appellant. | : | |

_____

<u>APPEARANCES:</u>

Brian T. Goldberg. Cincinnati, Ohio, for Appellant.

David Kelley, Adams County Prosecutor, and Kris D. Blanton, Assistant
Adams County Prosecutor, West Union, Ohio, for Appellee.

_____

Smith, P.J.

{¶1} Pursuant to a voluntary plea of guilty, Jesse Lee Williams was
convicted of involuntary manslaughter with a specification and tampering
with evidence. Williams now appeals the judgment entry of sentence of the
Court of Common Pleas, Adams County, dated February 22, 2019.
On appeal, Williams asserts that the trial court erred with regard to
imposition of a maximum consecutive prison sentence of seventeen years.
Upon review, we find no merit to Williams' arguments. Accordingly, we
overrule the assignments of error and affirm the judgment of the trial court.

## FACTS AND PROCEDURAL HISTORY

{¶2} Jesse Lee Williams, "Appellant," pled guilty to one count of involuntary manslaughter with specification, a violation of R.C. 2901.04(A) and R.C. 2941.145, a felony of the first degree. The specification was for his use of a firearm while committing the offense of involuntary manslaughter. He also entered a guilty plea to one count of tampering with evidence, a violation of R.C. 2921.12(A)(1), a felony of the third degree. On February 22, 2019, he was sentenced to a maximum consecutive prison sentence of seventeen years.

{¶3} Appellant's indictment and convictions stemmed from tragic events which occurred in May 2018 at Appellant's grandmother's garage in Peebles, Ohio. The underlying facts are limited and, as the trial court later commented, a mystery. Appellant, age 20 at the time, killed his seventeen-year-old friend, Bladyn Skaggs, by shooting him at close range with a Smith & Wesson .38 special.

{¶4} During the trial court proceedings, Appellant maintained that the two were close friends who often discussed their emotional issues with each other. Appellant explained to investigating officers that on the incident date, Bladyn Skaggs came over to "hang out" after Skaggs got off work. Appellant initially told responding officers that the two had been talking and

"horseplaying." Inexplicably, the victim committed suicide when Appellant walked out of the garage to use the bathroom. Then, Appellant later informed that the victim charged him with pruning shears and Appellant accidentally shot him. The most Appellant would explain about the young men's discussion with each other that evening was that "I got involved in somebody else's relationship and it was taken the wrong way. He came to confront me about that."

{¶5} The record indicates that much of the physical evidence at the scene did not match Appellant's version of the events. For example, the victim's car's motor was running the entire time the young men were together, a matter of possibly 2-6 hours. Skaggs' car was pulled up in the front yard in a peculiar manner, with the passenger door open, windshield wipers and headlights running. The pruning shears Appellant claimed the victim charged toward him with were found lying on a shelf with unbroken cobwebs on the handles. In addition to the blood found on and around Skaggs' body, multiple abrasions were discovered on his forehead above both eyes.

{¶6} At sentencing, the trial court asked Appellant if he wanted to "clear up exactly what happened" and Appellant declined. When he spoke on his own behalf, Appellant stated: "The only thing I would like to say is

that Bladyn was my best friend and I loved him like a brother. * * * I wish none of it would ever have occurred. * * * I never purposely did this." After the trial court imposed sentence, Appellant timely appealed.

## ASSIGNMENTS OF ERROR

"I. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY IMPROPERLY SENTENCING HIM TO CONSECUTIVE PRISON TERMS."

"II. THE TRIAL COURT ERRED BY IMPOSING A MAXIMUM CONSECUTIVE PRISON SENTENCE THAT WAS NOT SUPPORTED BY THE RECORD."

"III. THE TRIAL COURT ERRED BY INCLUDING IN THE SENTENCING ENTRY THAT MR. WILLIAMS SHALL BE RESERVED FOR DENIAL FOR TRANSITIONAL CONTROL AND IPP."

## A. STANDARD OF REVIEW

{¶7} R.C. 2953.08(G)(2) defines appellate review of felony sentences and provides, in relevant part, as follows:

The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for

resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

*State v. Pierce,* 4th Dist. Pickaway No. 18CA4, 2018-Ohio-4458, at ¶ 6.

{¶8} "[A]n appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *Pierce, supra,* at ¶ 7, quoting, *State v. Marcum,* 146 Ohio St.3d 516, 2016–Ohio–1002, 59 N.E.3d 1231, 1. This is a deferential standard. *Id.* at 23. Furthermore, "appellate courts may not apply the abuse-of-discretion standard in sentencing-term challenges." *Id.* at 10. Additionally, although R.C. 2953.08(G) does not mention R.C. 2929.11

or 2929.12, the Supreme Court of Ohio has determined that the same standard of review applies to findings made under those statutes. *Id*. at 23 (stating that "it is fully consistent for appellate courts to review those sentences that are imposed solely after consideration of the factors in R.C. 2929.11 and 2929.12 under a standard that is equally deferential to the sentencing court," meaning that "an appellate court may vacate or modify any sentence that is not clearly and convincingly contrary to law only if the appellate court finds by clear and convincing evidence that the record does not support the sentence"). "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus; *Id*. at 22.

> {¶9} Further, as noted by the Eighth District Court of Appeals:
>
> It is important to understand that the "clear and convincing"
>
> standard applied in R.C. 2953.08(G)(2) is not discretionary.

In fact, R.C. 2953.08(G)(2) makes it clear that "[t]he appellate court's standard for review is not whether the sentencing court abused its discretion." As a practical consideration, this means that appellate courts are prohibited from substituting their judgment for that of the trial judge.

It is also important to understand that the clear and convincing standard used by R.C. 2953.08(G)(2) is written in the negative. It does not say that the trial judge must have clear and convincing evidence to support its findings. Instead, it is the court of appeals that must clearly and convincingly find that the record does not support the court's findings. In other words, the restriction is on the appellate court, not the trial judge. This is an extremely deferential standard of review.

*Pierce, supra,* at ¶ 8, quoting *State v. Venes,* 8th Dist. Cuyahoga No. 98682, 2013–Ohio–1891, 992 N.E.2d 453, 20-21.

## B. LEGAL ANALYSIS

### 1. Consecutive Sentence

{¶10} Appellant argues that the trial court could not impose

consecutive sentences in this matter because the court did not make the appropriate findings in the sentencing entries as required. Appellant acknowledges that the trial court did make the consecutive sentence findings in open court and on the record. However, because the sentencing entry is deficient, Appellant concludes the court should order that his involuntary manslaughter sentence be served concurrent to his tampering with evidence sentence or, in the alternative, the matter should be remanded to the trial court for a new sentencing hearing. Appellee concedes that the trial court made the findings on the record but did not set forth the findings in the judgment entry of sentence, but asserts that this court should direct the trial court to issue a nunc pro tunc entry to adequately resolve the deficiency.

{¶11} Under R.C. 2929.14(C)(4), a trial court must engage in a three-step analysis and make certain findings before it may impose consecutive sentences. *State v. Robinson,* 4th Dist. Meigs No. 18CA10 & 18CA11, 2019-Ohio-2155, at ¶ 33; *State v. Blanton*, 4th Dist. Adams No. 16CA1031, 2018-Ohio-1275, at ¶ 96; *State v. Bever,* 4th Dist. Washington No. 13CA21, 2014-Ohio-600, at ¶ 16; *State v. Clay,* 4th Dist. Lawrence No. 11CA23, 2013-Ohio-4649, at ¶ 64. In particular, a trial court must find that (1) consecutive sentences are necessary to protect the public from future

crime or to punish the offender; (2) the consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) the harm caused by two or more multiple offenses is so great or unusual that no single prison term for any of the offenses committed adequately reflects the seriousness of the offender's conduct. R.C. 2929.14(C)(4). A trial court is required to make the findings mandated by R.C. 2929.14(C)(4), but is not required to recite "a word-for-word recitation of the language of the statute * * *." *State v. Bonnell,* 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, syllabus. *Id.* at ¶ 29. "[A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Id.* A failure to make the R.C. 2929.14(C)(4) findings renders a consecutive sentence contrary to law. *Id.* at ¶ 37; *Blanton* at ¶ 96; *Bever* at ¶ 17. Also, the findings must be separate and distinct, in addition to any findings that relate to the purposes and goals of criminal sentencing. *Blanton, supra*; *Bever, supra, at* ¶ 17.

{¶12} Because a court speaks through its journal, *State v. Brooks*, 113 Ohio St. 3d 199, 2007-Ohio-1533, 863 N.E.2d 10224, at ¶ 47, the court should also incorporate its statutory findings in the sentencing entry. *State v.*

*Bonnell, supra,* 2014-Ohio-3177, 16 N.E. 3d 659, at ¶ 29; *State v Hart,* 4th Dist. Athens No. 13CA8, 2014-Ohio-3733, at ¶ 38.  The findings required by the statute must be separate and distinct findings; in addition to any findings relating to the purposes and goals of criminal sentencing.  *Bever, supra*, at ¶ 17; *State v. Nia,* 8th Dist. Cuyahoga No. 99387, 2013-Ohio-5424, at ¶ 22.

{¶13} In this case, the trial court not only made the required findings, but also fully explained the reasons in open court as it imposed the consecutive sentence.  These specific findings will be more fully discussed below.  However, given that the trial court made all of the necessary findings on the record before imposing consecutive sentences, we view the failure to incorporate the statutory findings into the sentencing entry as a simple clerical mistake.  In *State v Moore,* 4th Dist. Adams No. 18CA1070, 2019-Ohio-1467, we observed at ¶ 20, "[S]uch a clerical mistake may be corrected by the court through a nunc pro tunc entry to reflect what actually occurred in open court." *Bonnell, supra,* 2014-Ohio-3177, 16 N.E.3d 659, at ¶ 30.

{¶14} Based on the foregoing, it appears that we need not vacate nor remand the trial court's judgment.  We hereby overrule Appellant's first assignment of error, and the judgment of the trial court is affirmed.  However, pursuant to App.R. 9(E), we instruct the trial court to issue a nunc

pro tunc sentencing entry that includes the required findings so as to accurately reflect the sentence imposed on the record during the sentencing hearing. *State v. Scoggins*, 4th Dist. Scioto No. 16CA3767, 2018-Ohio-8989, at ¶ 109.

2. Maximum Sentence

{¶15} Appellant was sentenced to eleven years, the maximum allowable sentence for involuntary manslaughter, and a stated prison term of three years on the specification for using a firearm to commit the offense of involuntary manslaughter. He was also sentenced to a prison term of three years for the tampering with evidence conviction. A sentencing court must consider the purposes and principles of sentencing in accordance with R.C. 2929.11; the seriousness and recidivism factors set forth in R.C. 2929.12; and the appropriate consecutive sentence requirements enumerated in R.C. 2929.14(C)(4). *State v. Morgan,* 4th Dist. Meigs No. 18CA13, 2019-Ohio-2385, at ¶ 34. Appellant acknowledges that the sentences he received are within the statutory ranges for each offense.

{¶16} As set forth above, appellate courts review felony sentences under the standard set forth in R.C. 2953.08(G)(2). *State v. Shankland,* 4th Dist. Washington No. 2019-Ohio-404, at ¶ 18; *State v. Marcum,* 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1. Although R.C.

2953.08(G)(2)(a) does not mention R.C. 2929.11 and 2929.12, the Supreme

Court of Ohio has determined that the same standard of review applies to

those statutes. *Morgan, supra,* at ¶ 35; *State v. Yost,* 4th Dist. Meigs No.

17CA10, 2018-Ohio-2719, at ¶ 11; *Marcum* at ¶ 23 (although "some

sentences do not require the findings that R.C. 2953.08(G)[2][a] specifically

addresses[,] * * * it is fully consistent for appellate courts to review those

sentences that are imposed solely after consideration of the factors in R.C.

2929.11 and 2929.12 under a standard that is equally deferential to the

sentencing court"); *State v. Butcher,* 4th Dist. Athens No. 15CA33, 2017-

Ohio-1544, at ¶ 84.

{¶17} R.C. 2929.11 provides:

(A) A court that sentences an offender for a felony shall

be guided by the overriding purposes of felony sentencing.

The overriding purposes of felony sentencing are to

protect the public from future crime by the offender

and others, to punish the offender, and to promote the

effective rehabilitation of the offender using the minimum

sanctions that the court determines accomplish those

purposes without imposing an unnecessary burden on

state or local government resources. To achieve those

purposes, the sentencing court shall consider the need for

incapacitating the offender, deterring the offender and

others from future crime, rehabilitating the offender,

and making restitution to the victim of the offense,

the public, or both.

(B) A sentence imposed for a felony shall be reasonably

calculated to achieve the three overriding purposes

of felony sentencing set forth in division (A) of this

section, commensurate with and not demeaning to the

seriousness of the offender's conduct and its impact

upon the victim, and consistent with sentences imposed

for similar crimes committed by similar offenders.

(C) A court that imposes a sentence upon an offender

for a felony shall not base the sentence upon the race,

ethnic background, gender, or religion of the offender.

*Morgan, supra,* at ¶ 36.

{¶18} R.C. 2929.12 sets forth factors to consider in determining the

appropriate sentence.  The statute contains a nonexclusive list of factors that

render an offender's conduct more serious than conduct normally

constituting the offense and factors that render an offender's conduct less

serious than conduct normally constituting the offense. R.C. 2929.12(B)(C).

Likewise, the statute sets forth a nonexclusive list of factors indicating the

offender is more likely to commit future crimes and factors indicating

recidivism is less likely. R.C. 2929.12(D)(E). *Morgan, supra*, at ¶ 37.

"Once the trial court considers R.C. 2929.11 and 2929.12, the burden is on

the defendant to demonstrate by clear and convincing evidence that the

record does not support his sentence." *Morgan, supra*, at ¶ 38, quoting,

*Yost, supra,* at ¶ 12, quoting, *State v. Akins-Daniels,* 8th Dist. Cuyahoga No.

103817, 2016-Ohio-7048, at ¶ 9; *State v. O'Neill,* 3d Dist. Allen No. 1-09-

27, 2009-Ohio-6156, at fn. 1.

{¶19} In this case, both the sentencing transcript and sentencing entry

reflect that the trial court considered the record; the oral statements of

counsel and Appellant; the oral statements of the victim's mother,

grandmother, and older sister; a letter from the victim's eight-year old sister

read into the record; twenty-five letters written on behalf of Appellant; and

the presentence investigation report. The trial court commented that the

presentence investigation report was the " largest, most voluminous

presentence investigation report the Court has considered. And I think, for

the right reasons. Thoroughness of the preparation of it by the probation

department." The record reflects the trial court also considered the

overriding purposes of felony sentencing pursuant to R.C. 2929.11, and considered all relevant seriousness and recidivism factors of R.C. 2929.12. While Appellant's eleven-year term for involuntary manslaughter, three-year term for the specification, and three-year term for tampering with evidence do constitute maximum sentences for those counts, the sentences are within the statutory range for each offense. Therefore, we initially conclude that Appellant's overall maximum sentence is not contrary to law.

{¶20} Appellant's chief argument, however, is that his sentence is not clearly and convincingly supported by the record. Appellant asserts that the trial court did not adequately consider the statutory sentencing factors. Appellant points to his very limited criminal record; his limited education; and his lack of history for alcohol or drug abuse.[1] Because of these facts, Appellant concludes that the seventeen-year maximum sentence is excessive and not supported by the record. For the reasons which follow, we disagree.

{¶21} We have reviewed the entire record, including the presentence investigation report. The trial court read from it at length during sentencing. Then, the trial court spoke of balancing the recidivism factors and stated that he could not find genuine remorse. While the trial court acknowledged the

---

[1] Appellant had only two minor traffic infractions on his record.

letters written on behalf of Appellant also emphasizing the practically

nonexistent criminal record, his good grades in school, lack of substance

abuse history, and characterizing his personality as gentle and respectful, the

trial court stated:

> Mr. Williams, where I take exception to the remorse is those
>
> of us that toil in this room, we seek only the truth.  And you
>
> have refused to give the truth.  * * * There's not a person
>
> that could figure out what happened because you refuse to
>
> tell us.  What we know didn't happen is that Mr. Bladyn
>
> Skaggs did not have a weapon. * * * The physical evidence
>
> defies your words.  And so we will always be left to wonder.
>
> And I think it's so unfair to Ms. Parker, to the sisters, to the
>
> father, to your own mother that you would leave them with
>
> such uncertainty.  But what we know didn't happen is what
>
> you say happened.  You talk about he approaches you and
>
> perceive that he had a knife and so you shield your face
>
> with a gun, you reach for a gun and shield your face and he
>
> gets shot in the side of the head in the left ear.  It defies all
>
> logic.

**{¶22}** This is the point at which the trial court asked if Appellant would like the opportunity to clearly explain the underlying facts of the incident, ostensibly meaning: "What were you talking about? Why did you shoot him?" As indicated, Appellant declined. The trial court then commented that it did not appear that Appellant was a bad man and pointed out he was the exception of most defendants he saw in the courtroom. As the trial court imposed the consecutive portion of Appellant's sentence, the court commented:

The Court in its determination finds that two of the multiple offenses were committed as part of one or more courses of conduct. The senseless murder and then the senseless blame of suicide and then the senseless tampering with the evidence and the multiple lies about the same.

**{¶23}** The court further found:

And the harm caused by two or more of these multiple offenses is so great and so unusual that no single prison term for any of the offenses committed as part of this course of conduct on this evening would adequately reflect the seriousness of the offender's conduct. Again, it would be disingenuous to ever suggest that any of us would be able to understand

the pain of the Skaggs' family, having not been through that.

But the profound impact that you have had on the mother,

the sister, the grandmother, the little sister is so great and

so unusual that the sentences will be consecutive.

**{¶24}** We are required to afford deference to the trial court's broad discretion in making sentencing decisions; trial courts have great latitude and discretion in formulating the appropriate sentence. *State v. Rahab,* 150 Ohio St.3d 152, 2017-Ohio-1401, 80 N.E.3d 431, ¶ 10. Precedent refutes any contention that each statutory or other relevant factor is entitled to equal or a certain weight in the balancing process. *Yost, supra,* at ¶ 19; *See State v. Graham*, 4th Dist. Adams No. 17CA1046, 2018-Ohio-1277, at ¶ 25, rejecting the argument that because each of the statutory sentencing factors are mandatory, each is entitled to equal weight on balance, citing *State v. Bailey,* 4th Dist. Highland No. 11CA7, 2011-Ohio-6526, at ¶ 34, quoting *State v. Arnett,* 88 Ohio St.3d 208, 215, 724 N.E.2d 793 (2000) ("in considering the factors set forth in R.C. 2929.12, the trial court has 'the discretion to determine the weight to assign a particular statutory factor' "). Furthermore, " 'Simply because the court did not balance the factors in the manner appellant desires does not mean that the court failed to consider them, or that clear and convincing evidence shows that the court's findings

are not supported by the record.' " *Yost, supra,* at ¶ 20, quoting, *State v. Graham,* 4th Dist. Meigs No. 17CA10, 2018-Ohio-1277, at ¶ 26, quoting *State v. Butcher,* 4th Dist. Athens No. 15CA33, 2017-Ohio-1544, at ¶ 87.

{¶25} Here, we decline to second-guess the trial court's sentencing decision. The trial court was faced with a factual scenario in which one promising young life has been lost, another young life will be spent behind prison bars, and two families' lives have been forever altered. Given the facts herein and the standard of review, we cannot conclude that Appellant's sentence is clearly and convincingly unsupported by the record. Therefore, we also find no merit to Appellant's second assignment of error. As such, it is hereby overruled.

3. <u>Prison programming.</u>

{¶26} The language of the trial court's order states the trial court has "reserved for denial" his participation in transitional control and IPP ("Intensive Program Prison"). Appellant asserts this "automatic" denial is improper. Appellant directs our attention to the Fifth Appellant District's decision in *State v. Spears,* 5th Dist. Licking No. 10CA-95, 2011-Ohio-1538, which held that it is error for the trial court to deny placement into prison programming at the time of sentencing. Appellant concludes that the matter should be remanded to the trial court for a new sentencing hearing. In

response, Appellee points out that any error in the language of the court's order is harmless error at best because Appellant is not qualified for such programs.

{¶27} We begin with the trial court's order as to IPP. IPP " ' refers to several ninety-day programs, for which certain inmates are eligible, that are characterized by concentrated and rigorous specialized treatment services. An inmate who successfully completes an IPP will have his/her sentence reduced to the amount of time already served and will be released on post-release supervision for an appropriate time period.' '' *State v. Turner,* 8th Dist. Cuyahoga Nos. 103610, 1103611, 2016-Ohio-3325, at ¶ 28, quoting, *State v. Peltier,* 2d Dist. Champaign No. 2018-CA-21, 2019-Ohio-569, at ¶ 20, quoting, *State v. Howard,* 190 Ohio App. 3d 734, 2010-Ohio-5283, 944 N.E. 2d 258, at ¶ 12 (2d Dist.), quoting the Ohio Department of Correction and Rehabilitation website. IPPs focus on " 'educational achievement, vocational training, alcohol and other drug abuse treatment, community service and conservation work, and other intensive regimens or combinations of intensive regimens.' '' *Howard, supra*, at ¶ 10, quoting R.C. 5120.032. Trial courts have discretion to recommend placement of an offender into an IPP pursuant to R.C. 5120.032.

{¶28} However, in this case, Appellant's argument is moot. R.C. 5120.032(B)(2)(a) provides that a prisoner who is serving a prison term for a felony of the first degree is not eligible to participate in an intensive program prison. *State v. Jones,* 2d Dist. Montgomery No. 24075, 2011-Ohio-4013, at ¶ 43. Appellant was convicted and sentenced for involuntary manslaughter, a felony of the first degree. R.C. 5120.032(B)(2)(a) specifically excludes individuals, serving prison terms for first and second-degree felonies from participating in an IPP. Hence, Appellant is not eligible for IPP.

{¶29} The trial court also "reserved for denial," Appellant's ability to participate in the transitional control program. R.C. 2967.26 allows for the creation of a transitional control program for those nearing the end of their prison sentence. The statute reads, in pertinent part:

> "(2) * * * the adult parole authority shall give notice of the pendency of the transfer to transitional control to the court of common pleas of the county in which the indictment against the prisoner was found and of the fact that the court may disapprove the transfer of the prisoner to transitional control and shall include a report prepared by the head of the state correctional institution in which the prisoner is confined. * * * If the court disapproves of the transfer of the prisoner to

transitional control, the court shall notify the authority of the
disapproval within thirty days after receipt of the notice.  If the
court timely disapproves the transfer of the prisoner to
transitional control, the authority shall not proceed with the
transfer.  If the court does not timely disapprove the transfer of
the prisoner to transitional control, the authority may transfer
the prisoner to transitional control."

*See also*, *State v. Toennissen*, 12th Dist. Butler Nos. CA-2010-11-307,
CA2010-11-308, and CA-2010-11-309, 2011-Ohio-5869, at ¶ 29.

{¶30} As explained above, once the trial court is notified of the
pendency to transitional control, the court still retains discretion to
deny the transfer.  When the legislature has meant for the judiciary to
have the discretion to deny eligibility for prison programs, it has made
its intent clear.  *State v. Livingston,* 2014-Ohio-1637, 9 N.E.3d 1117,
(1st Dist.), at ¶ 8.  Furthermore, the trial court's language does not
"automatically" deny participation.  *See Toennissen, supra*, (Trial
court retained the power to reconsider and, if prudent, overturn its
initial objection to transitional control.)  Given the language of the
prison programming statute, the trial court's language is unnecessary

and may hint that he disfavors Appellant's entry into IPP, but it did not automatically deny IPP at the time of sentencing.

{¶31} For the foregoing reasons, we find no merit to Appellant's third assignment of error.  Accordingly, it is hereby overruled.

{¶32} Having overruled all assignments of error, we affirm the judgment of the trial court.  However, in our analysis of the first assignment of error, we have found a clerical mistake.  Therefore, pursuant to App.R. 9(E), we instruct the trial court to issue a nunc pro tunc sentencing entry that includes the required findings so as to accurately reflect the sentence imposed on the record during the sentencing hearing.

**JUDGMENT AFFIRMED
WITH INSTRUCTIONS**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED WITH INSTRUCTIONS and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Adams County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & McFarland, J.:  Concur in Judgment and Opinion.

For the Court,

BY:  _____

Jason P. Smith, Presiding Judge

### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**