**[Cite as *State v. Wooten*, 2020-Ohio-49.]**

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2019-CA-8 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-186 |
| | : | |
| ZACHARY LYLE WOOTEN | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 10th day of January, 2020.

. . . . . . . . . . .

KEVIN S. TALEBI, Atty. Reg. No. 0069198, Champaign County Prosecutor's Office, Appellate Division, 200 North Main Street, Urbana, Ohio 43078
     Attorney for Plaintiff-Appellee

SAMANTHA L. BERKHOFER, Atty. Reg. No. 0087370, 202 North Limestone Street, Suite 250, Springfield, Ohio 45502
     Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FROELICH, J.

{¶ 1} Zachary Lyle Wooten appeals from a judgment of the Champaign County Court of Common Pleas, which revoked his community control and sentenced him to 18 months in prison for domestic violence. For the following reasons, the trial court's judgment will be affirmed.

## I. *Anders* Appeal Standard

{¶ 2} Wooten's appellate counsel has filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). We informed Wooten that his attorney had filed an *Anders* brief on his behalf and granted him 60 days from that date to file a pro se brief. Wooten did not file a pro se brief.

{¶ 3} Pursuant to *Anders*, we must determine, "after a full examination of all the proceedings," whether the appeal is "wholly frivolous." *Id.* at 744; *Penson v. Ohio*, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988). An issue is not frivolous merely because the prosecution can be expected to present a strong argument in reply. *State v. Pullen*, 2d Dist. Montgomery No. 19232, 2002-Ohio-6788, ¶ 4. Rather, a frivolous appeal is one that presents issues lacking arguable merit, which means that, "on the facts and law involved, no responsible contention can be made that it offers a basis for reversal." *State v. Marbury*, 2d Dist. Montgomery No. 19226, 2003-Ohio-3242, ¶ 8, citing *Pullen* at ¶ 4. If we find that any issue — whether presented by appellate counsel, presented by the defendant, or found through an independent analysis — is not wholly frivolous, we must appoint different appellate counsel to represent the defendant. *Id.* at ¶ 7.

## II. Factual and Procedural History

{¶ 4} On September 7, 2017, a grand jury indicted Wooten for domestic violence, in violation of R.C. 2919.25(A), a felony of the fourth degree, and endangering children,

in violation of R.C. 2919.22(A), a first-degree misdemeanor. Both charges related to Wooten's seven-year-old son, who Wooten struck after the child missed the school bus one morning.

{¶ 5} On October 16, 2017, Wooten pled guilty to the domestic violence charge. In exchange for the plea, the State agreed to dismiss the endangering children charge and to recommend a presentence investigation (PSI). The agreement further indicated that if Wooten had "no further criminal history record than what is already known and disclosed in the Prosecutor's discovery packet or by Defendant's discovery packet, the State agrees to recommend at Sentencing: community control." If, on the other hand, the PSI disclosed additional criminal history or if Wooten were charged with a new offense prior to sentencing, the State would not be bound to that recommendation. After a Crim.R. 11 plea colloquy, the trial court accepted Wooten's guilty plea to domestic violence. (Wooten acknowledged that he previously had been convicted of domestic violence in Champaign C.P. No. 2015-CRB-274.)

{¶ 6} At sentencing on November 17, 2017, the State recommended community control. It noted that Wooten had a prior criminal history, including a prior domestic violence conviction, and that Wooten had a history of not complying with community control. The prosecutor acknowledged that Wooten "does appear to have a substantial substance abuse problem, which is the contributing factor to the commission of the offense." The prosecutor opined that "punishment is appropriate as part of the community control sanctions," and it requested a jail term as well as sanctions to address the substance abuse issue, mental health counseling, and supervised contact with the victim.

{¶ 7} Defense counsel also requested community control. Counsel opposed a jail sentence, noting that Wooten had been on house arrest and had an ankle monitor, and there had been no violations. Counsel indicated that Wooten "actually went beyond what most of my clients actually do as far as getting their lives in order."

{¶ 8} After hearing from Wooten and discussing Wooten's situation with him, the trial court imposed three years of community control. The court ordered that Wooten comply with the standard conditions of community control, as well as numerous "special conditions." Those conditions included paying court costs, fines, and legal fees, complying with cognitive behavioral counseling and medication-assisted treatment for opiate dependency, completing Think For a Change Programming, obtaining various assessments, and completing parenting classes and family counseling. Wooten was to complete 100 hours of community service. He was to remain on house arrest and electronic monitoring. The court ordered Wooten not to have contact with his son except when approved by Children Services. The court found that Wooten had the ability to pay courts costs and legal fees, and it imposed a $250 fine. The court notified Wooten that, if he violated his community control and it were revoked, the court would impose 18 months in prison.

{¶ 9} Following the sentencing hearing, the trial court filed a written judgment entry consistent with its oral pronouncement. Wooten did not appeal his conviction.

{¶ 10} On October 31, 2018, a probation officer requested that community control be suspended and that a capias be issued for Wooten's arrest, because Wooten's whereabouts were unknown. Wooten was arrested on February 7, 2019.

{¶ 11} On February 11, 2019, a probation officer filed a notice of supervision

violation, which alleged that Wooten had violated six different conditions of his community control.   The same day (Feb. 11), a magistrate held an "arraignment" on the community control violations.   The court determined that Wooten was indigent and appointed counsel for him.

{¶ 12} The next day (Feb. 12), the probation officer filed a corrected notice of supervision violation.   The notice again alleged that Wooten failed to comply with the conditions of community control in the following six ways:

(1) failed to report to his supervising officer as ordered on October 4, 2018

(supervision rule 2)

(2) changed his address without permission on or about October 4, 2018

(supervision rule 8)

(3) refused to submit to a drug screen on February 8, 2019

(supervision rule 7)

(4) failed to make minimum monthly payments of $50 per month due on the

28th of each month for court costs, fines, and court-appointed counsel fees

(special condition - supervision rule 2)

(5) failed to complete parenting classes, substance abuse programming,

alcohol dependency programming, anger management programming,

mental health programming, and family counseling

(special condition – supervision rule 5)

(6) failed to complete 100 hours of community service

(special condition – supervision rule 8)

(The State formally withdrew the February 11 notice of violation at the subsequent merits

hearing.)

{¶ 13} On February 13, 2019, the magistrate held an "arraignment with counsel" on the violations. The magistrate's subsequent journal entry indicated that Wooten had accepted service of the community control violation notice, that he did not contest the existence of probable cause, and that the magistrate found that probable cause existed. The magistrate set a hearing on the merits for February 22, 2019. The entry indicated that this hearing was audio-recorded, but no transcript was prepared.[1]

{¶ 14} At the merits hearing, Wooten appeared in yellow jail attire, indicating to the trial court that he had been disciplined at the jail. The court told the parties that an incident report from the Tri-County Jail would be added to the PSI as a court's exhibit. The court provided the prosecutor and defense counsel an opportunity to review the document, in which Wooten was alleged to have stuffed the sink and toilet in his cell with toilet paper, causing the cell to flood, and to have torn open his mattress and removed part of the stuffing to make a pillow.

{¶ 15} Wooten informed the court at the hearing that he wished to enter admissions to the alleged violations. The court then engaged in a colloquy, akin to a Crim.R. 11 colloquy, with Wooten. The court addressed whether Wooten was under the influence of alcohol or an illegal substance or had taken any prescription medication; whether he had reviewed the State's discovery with his attorney; whether he had received enough information to make a knowing, intelligent, and voluntary decision, whether he

---

[1] It is axiomatic that the record in an *Anders* case must contain transcripts of all on-the-record proceedings in the trial court. When the record is incomplete, the filing of an *Anders* brief is not appropriate. Nevertheless, in light of Wooten's subsequent admission to the community control violations, we find that any error at the "arraignment hearing" would be harmless.

had confidence in his attorney; whether he was on parole, probation, or post-release control in another case; and whether he had previously been to prison. The court told Wooten of the options available to the court if community control were revoked, including imposing a sentence of 18 months in prison, and of Wooten's post-release control obligation if a prison sentence were imposed. The court asked Wooten if he understood that an admission to the violations would be an admission of guilt and would waive his right to a merits hearing, during which he had certain constitutional rights. Wooten entered admissions to each of the violations listed on the February 12 notice, and the court found him "guilty of the violation behavior."

{¶ 16} The State recommended that Wooten's community control be revoked. It argued that "[a]bout 15 months into the three-year term of community control that the Court imposed, the Defendant has done, from the State's perspective, really nothing to even show an honest, good faith effort to comply with the terms of community control and to change his behavior." The prosecutor also noted Wooten's recent conduct in the Tri-County Jail.

{¶ 17} Defense counsel requested that Wooten be returned to community control. Counsel argued:

> * * *
>
> The Defendant has informed me that he does not want to go to prison. He cannot get certain jobs that will be available to him should he go. The Defendant in this case had a prior history with the probation officer before he was placed on his supervision. Mostly resulting from his girlfriend at the time who was on probation.

He was successful in staying both out of trouble and staying in contact with the probation officer. So well, in fact, that he had gained back custody of his child while he was on probation from Children Services. During that time, in fact, he had a vehicle accident that left him quite severely injured. However, he still managed to go to work two weeks thereafter and avoid painkillers in order to avoid re-introduction into his addiction.

He was working at a job at a – servicing cars. But it was not paying enough to pay the bills. He was doing piecework. In fact, the last week he was on the job he only made like $64. Therefore, he quit that job and went to Springfield. It was at that time that the probation officer went to his job and found that he was not there. Having learned that the probation officer was there, and having been told that an arrest warrant was out, he ceased contact with the probation officer. Believing that if he could get his ducks in order – in a row, that he could then retain – or regain the trust of the probation officer. At least enough to satisfy this Court.

He has informed me that he is, in fact, has not done the 100 hours of community service hours. But he has done a considerable number of those. But he does not have the documentation for that. In fact, he told me he has 90 hours of those. * * * We would point out to the Court that he has two children that depend upon him for maintenance. A son of 8 and a daughter of 6. And he was in contact in the area. He was not out running around the streets. But was trying to maintain sustenance for those two

children. Therefore, we ask that he be returned to community control.

{¶ 18} Wooten also made a brief statement. He expressed that his behavior at the jail was "ignorant" and that he should not have acted that way. Wooten indicated that his defense counsel had stated everything else that he had to say. When asked by the court why he had refused to take the drug test on February 8, Wooten responded that his lack of cooperation was due to his seeing his probation officer "smiling with a smirk on his face of, ha-ha, I got you." The court told Wooten that his reaction "leads me to believe that you weren't clean or that you were not willing to work with the PO. * * * [T]hat cuts into your presentation that you want to be back on community control."

{¶ 19} The trial court stated that it had reviewed the PSI, the community control violation report prepared by the Adult Parole Authority, and the jail incident report (Court's Ex. 1). The court indicated that it also had considered the statements by the attorneys and Wooten, as well as the court's interaction at the hearing with Wooten. The court found that a prison sentence was consistent with the principles and purposes of sentencing, because (1) he committed acts of vandalism during the community control violation case for a felony offense of violence, (2) he absconded from supervision for four months and then, upon apprehension, failed to submit to a urine screen, demonstrating a lack of desire to cooperate with his probation officer, (3) Wooten made no verifiable steps to complete his community control sanctions, despite being on community control for 17 months, and (4) he had two prior community control cases in 2013 and 2015 that were terminated unsuccessfully.

{¶ 20} The court revoked Wooten's community control and imposed 18 months in prison. The court informed Wooten that, upon his release, he would be subject to up to

three years of post-release control at the discretion of the parole board. The trial court disapproved Wooten for an intensive program prison, but recommended him for a risk reduction sentence. The trial court determined that Wooten was entitled to 65 days of jail time credit as of February 22, 2019. It ordered Wooten to pay court costs for the community control violation case and the fine and attorney fees previously imposed. The court ordered the Department of Rehabilitation and Correction to withhold funds from Wooten's inmate account.

{¶ 21} Wooten appeals from the revocation of his community control.

### III. Review of the Revocation of Wooten's Community Control

{¶ 22} The right to continue on community control depends upon compliance with the conditions of community control and is a matter within the sound discretion of the trial court. *State v. Lewis*, 2d Dist. Montgomery No. 23505, 2010-Ohio-3652, ¶ 11. "[A] revocation of community control punishes the failure to comply with the terms and conditions of community control, not the specific conduct that led to the revocation." *State v. Black*, 2d Dist. Montgomery No. 24005, 2011-Ohio-1273, ¶ 17. Crim.R. 32.3, which governs revocation of community control, provides that the trial court "shall not impose a prison term for violation of the conditions of a community control sanction or revoke probation except after a hearing at which the defendant shall be present and apprised of the grounds on which action is proposed."

{¶ 23} "Community control violation proceedings are not equivalent to criminal prosecutions." *Black* at ¶ 12. Nevertheless, "[a] defendant is entitled to certain due process protections before a court may revoke community control sanctions, although the full panoply of rights due a defendant in a criminal prosecution does not apply to the

revocation of community control." *State v. Harmon*, 2d Dist. Champaign No. 2007-CA-35, 2008-Ohio-6039, ¶ 6, citing *Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). First, a defendant is entitled to a preliminary hearing to determine whether there is probable cause to believe that the defendant has violated the terms of his or her community control. *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *State v. Blakeman*, 2d Dist. Montgomery No. 18983, 2002 WL 857659, *2. Second, due process requires a final hearing to determine whether community control should be revoked. *Id.*

{¶ 24} A defendant may elect to forgo a hearing on the merits of the alleged community control violations and admit to the violations. Where a defendant elects to do so, the trial court is not required to comply with the requirements of Crim.R. 11, which governs pleas. *State v. Cunningham*, 2d Dist. Clark Nos. 2014-CA-99 and 2014-CA-100, 2015-Ohio-2554, ¶ 14. Unlike in felony plea hearings, the trial court is not required to notify a defendant at a community control revocation hearing of the maximum prison sentence that may be imposed. That notification must have been provided at the original sentencing (if no prior revocation hearing had been held) or at the most recent revocation hearing (if multiple revocation hearings had been held). *State v. Fraley*, 105 Ohio St.3d 13, 2004-Ohio-7110, 821 N.E.2d 995.

{¶ 25} Upon revoking a defendant's community control, the trial court may (1) lengthen the term of the community control sanction; (2) impose a more restrictive community control sanction; or (3) impose a prison term on the offender, provided that the prison term is within the range of prison terms available for the offense for which community control had been imposed, the term does not exceed the prison term specified

in the notice provided to the offender at the original sentencing hearing, and the term complies with any applicable limitation in R.C. 2929.15(B)(1)(c). *See former* R.C. 2929.15(B)(1) (effective October 29, 2018 to March 21, 2019).

{¶ 26} Upon review of the entire record, we find no non-frivolous issues for appeal. First, we find no arguably meritorious claim related to the community control violation procedures. Wooten was notified in writing of the alleged violations of community control. The record reflects that Wooten had an arraignment on the violations with counsel, during which he agreed that probable cause existed. Although no transcript of the arraignment hearing was prepared for our review, any error in the court's conclusion regarding probable cause was rendered harmless by Wooten's subsequent admissions to the violations. Moreover, Wooten's admissions waived the requirements that the State present evidence against him, and he waived his rights to present evidence and confront witnesses.

{¶ 27} Second, there is no arguably meritorious claim that Wooten's admissions to the community control violations were not made knowingly, intelligently, and voluntarily. The trial court conducted an extensive colloquy with Wooten, during which the court asked Wooten a series of questions akin to a Crim.R. 11 plea hearing. A review of the merits hearing transcript reflects that Wooten's admissions were made knowingly, intelligently, and voluntarily.

{¶ 28} Third, appellate counsel raised one potential assignment of error relating to the length of Wooten's prison sentence. Counsel's argument is somewhat confusing, but she appears to claim that the trial court's imposition of the maximum sentence was contrary to law. Adding to the confusion is appellate counsel's brief, which incorrectly

asserts that Wooten was sentenced to 30 days for a fourth-degree misdemeanor.

{¶ 29} The trial court's 18-month sentence is within the statutory range for a fourth-degree felony. *See* R.C. 2929.14(A)(4). And, because Wooten's fourth-degree felony offense for which he was on community control was an offense of violence, R.C. 2929.15(B)(1)(c)(ii) did not apply and the trial court was permitted to impose any prison term within the statutory range. In addition, the trial court informed Wooten at his original sentencing hearing that it would impose 18 months in prison if he violated the terms of his community control. In revoking Wooten's community control, the trial court indicated that it considered the principles and factors in R.C. 2929.11 and 2929.12, and it provided detailed reasons for its sentence. The 18-month sentence was not contrary to law.

{¶ 30} In addition, Wooten has no arguably meritorious claim that the length of his prison sentence is clearly and convincingly not supported by the record. Wooten's conviction for domestic violence stemmed from an incident where Wooten struck his seven-year-old son in the face after the son missed the school bus; school personnel observed a red swollen area on the child's face. According to the PSI, the son told an adult that Wooten threatened to "beat" his son "10 times worse when he got home" if the son told anyone. Wooten had two prior felony convictions (in 2008 and 2010) for which he was placed on community control; Wooten committed violations during each period of community control and was unsuccessfully terminated from both. Wooten failed to comply with numerous provisions of his community control in this case, he absconded, and he engaged in vandalism at the jail after his arrest on the alleged violations. Any claim that the 18-month sentence is clearly and convincingly unsupported by the record would be frivolous.

{¶ 31} The trial court properly imposed post-release control for Wooten's offense, pursuant to R.C. 2967.28. We find no non-frivolous claim related to that issue.

{¶ 32} The trial court expressly disapproved Wooten for an intensive program prison (IPP). IPP " 'refers to several ninety-day programs, for which certain inmates are eligible, that are characterized by concentrated and rigorous specialized treatment services. An inmate who successfully completes an IPP will have his/her sentence reduced to the amount of time already served and will be released on post-release supervision for an appropriate time period.' " *State v. Howard*, 190 Ohio App.3d 734, 2010-Ohio-5283, 944 N.E.2d 258, ¶ 12 (2d Dist.), quoting the Ohio Department of Correction and Rehabilitation website.

{¶ 33} Pursuant to R.C. 2929.19(D), a trial court may recommend placement in IPP, disapprove placement, or make no recommendation. If the court recommends or disapproves placement, "it shall make a finding that gives its reasons for its recommendation or disapproval." *Id.* This court has previously held that a general statement indicating that the trial court based its decision to approve or disapprove IPP after reviewing certain parts of the record (such as criminal history, PSI, and facts and circumstances of the offense) does not satisfy the finding requirement in R.C. 2929.19(D). *E.g., State v. Peltier*, 2d Dist. Champaign No. 2018-CA-21, 2019-Ohio-569.

{¶ 34} In this case, the trial court stated, "After considering the reasons for imposing imprisonment, the Court does not recommend and disapproves placement in Intensive Program Prison." At the merits hearing, the trial court had provided detailed reasons, stated above, for imposing a prison sentence. *Accord State v. Johnson*, 2016-Ohio-5160, 69 N.E.3d 176 (2d Dist.). On this record, we find no non-frivolous claim that

the trial court failed to comply with the findings requirement of R.C. 2929.19(D).

{¶ 35} Finally, we find no non-frivolous issue related to the trial court's order to withhold funds from Wooten's inmate account. We have found similar language to be an appropriate method for collecting court costs and court-appointed counsel fees. *See, e.g., State v. Skirvin*, 2d Dist. Champaign No. 2017-CA-26, 2019-Ohio-2040.

### IV. Conclusion

{¶ 36} We have examined the entire record and conducted our independent review in accordance with *Penson*, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300. We agree with appellate counsel that no non-frivolous issues exist for appeal. Accordingly, the trial court's judgment will be affirmed.

. . . . . . . . . . . .

DONOVAN, J. and TUCKER, J., concur.

Copies sent to:

Kevin S. Talebi
Samantha L. Berkhofer
Zachary Lyle Wooten
Hon. Nick A. Selvaggio